**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**THERESA MICHELE BLUE,**

> **Plaintiff,**

**v.**                                                   **Case No: 5:25-cv-808-SPC-PRL**

**YALE UNIVERSITY, YALE SCHOOL**
**OF MEDICINE, JAMES VAN RHEE,**
**JANE MCDANIEL, JACQUELINE**
**COMSHAW, YALE PHYSICIAN**
**ASSISTANT ONLINE PROGRAM,**
**and DOES 1-20,**

> **Defendants.**

---

### ORDER

Plaintiff Theresa Michele Blue, proceeding *pro se*, brings this action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq.* (Doc. 1). Plaintiff seeks to proceed in forma pauperis. (Doc. 2). For the reasons explained below, Plaintiff's motion to proceed in forma pauperis is taken under advisement, and in an abundance of caution, Plaintiff will be permitted to amend the complaint.

### I.    BACKGROUND

Plaintiff, who was enrolled in the Yale Physician Assistant Online Program, filed this action against Yale University; Yale School of Medicine; James Van Rhee, a program director and problem-based learning ("PBL") instructor; Jane McDaniel, an administrator "responsible for student support, intervention, discipline, and disability-related process" and a PBL instructor; Jacqueline Comshaw, an administrator "responsible for student support,

intervention, discipline, and disability-related process"; Yale Physician Assistant Online Program;[1] and Does 1-20 (collectively, the "Defendants"). (*See id.* at ¶¶ 2, 11-16).

In her complaint, Plaintiff avers that this action arises from "Defendants' failure to accommodate [her] known disability, retaliation after [she] reported a threat and retaliatory conduct by the Program Director to administrators[,] including the President of the School of Medicine, punitive treatment of disability-related impairment, and Defendants' failure to preserve and produce critical records." (*See id.* at ¶ 1). Plaintiff alleges that she "is a qualified individual with a disability and was registered with Yale's Student Accessibility Services[.]" (*See id.* at ¶ 3). She claims that she entered the Yale Physician Assistant Online Program with "a documented disability and experienced functional impairment during high-pressure oral performance requirements," for which "Defendants had actual notice of [her] disability and functional limitations." (*See id.* at ¶¶ 3, 17). Plaintiff asserts that she "requested reasonable accommodations, including alternative participation formats," but "Defendants refused, delayed, mishandled, and/or withdrew accommodations without engaging in a lawful interactive process." (*See id.* at ¶¶ 18-19). She avers that "[a]ny testing accommodation provided addressed only timed examinations and did not address the primary barriers [she] faced, including high-frequency oral performance requirements that triggered disability-related cognitive shutdown and prevented meaningful learning." (*See id.* at ¶ 20).

As a result of Defendants' alleged violations, Plaintiff claims to have suffered "substantial educational, professional, economic, and ongoing harm, including permanent

---

[1] Plaintiff states that the Yale Physician Assistant Online Program is a division of Yale School of Medicine that consists of "frequent, mandatory, real-time oral participation within [PBL] sessions." (*See* Doc. 1 at ¶¶ 2, 13).

neurologic impairment resulting in disability-related cognitive and functional limitations." (*See id*. at ¶ 5). She asserts claims against Defendants for violations of the ADA, the Rehabilitation Act, and various state laws. (*See id*. at pp. 5-7). Plaintiff seeks compensatory damages, economic and non-economic damages, punitive damages, declaratory and injunctive relief, and entry of a judgment in her favor. (*See id*. at p. 8).

## II.    LEGAL STANDARDS

An individual may be allowed to proceed in forma pauperis if she declares in an affidavit that she is unable to pay such fees or give security therefor. *See* 28 U.S.C. § 1915(a)(1). However, before a plaintiff is permitted to proceed in forma pauperis, the Court is obligated to review the complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See id.* § 1915(e)(2). If the complaint is deficient, the Court is required to dismiss the suit *sua sponte*. *See id*.

When evaluating a complaint under § 1915, courts must liberally construe *pro se* filings and hold them to less stringent standards than papers drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts cannot act as counsel for plaintiffs or rewrite pleadings. *See United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021) (citation omitted). *Pro se* litigants must still comply with the procedural rules applicable to ordinary civil litigation. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

Nevertheless, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged

misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See id*. (quoting *Twombly*, 550 U.S. at 555). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *See Twombly*, 550 U.S. at 555 (citations omitted). Although a court must accept as true well-pleaded allegations, it is not bound to accept a legal conclusion stated as a "factual allegation" in the complaint. *See id*.; *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations omitted); *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013) (per curiam) (stating that the court "afford[s] no presumption of truth to legal conclusion and recitations of the basic elements of a cause of action") (citations omitted).

## III.   DISCUSSION

### A. Failure to Comply with the Pleading Requirements in the Federal Rules of Civil Procedure

As a threshold matter, Plaintiff's complaint fails to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure. Rule 8 requires that, among other things, the complaint set forth "a short and plain statement of the claim" demonstrating an entitlement to relief. *See* Fed. R. Civ. P. 8(a)(2). Each allegation in the complaint must be "simple, concise, and direct." *See* Fed. R. Civ. P. 8(d)(1). Rule 10 requires that a party "state its claims . . . . in numbered paragraphs, each limited as far as practicable to a single set of

circumstances" and that each claim be stated in separate counts "[i]f doing so would promote clarity." *See* Fed. R. Civ. P. 10(b).

In this instance, Plaintiff's complaint does not contain a short and plain statement of the claim showing that she is entitled to relief as required by Rule 8(a)(2). *See* Fed. R. Civ. P. 8(a)(2). Although Plaintiff is proceeding *pro se*, she is "still required to conform to procedural rules, and the court is not required to rewrite a deficient pleading." *See Washington v. Dep't of Child. & Fams.*, 256 F. App'x 326, 327 (11th Cir. 2007) (per curiam) (citation omitted).

Given that Plaintiff's complaint violates Rule 8, it is an impermissible shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (defining a "shotgun pleading" as a pleading that "violate[s] either Rule 8(a)(2) or Rule 10(b), or both"). The Eleventh Circuit has identified four basic categories of shotgun pleadings: (1) a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to separate "each cause of action or claim for relief" into a different count; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See id.* at at 1321-23. Each of these types of pleadings fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See id.* at 1323. The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam). Indeed,

shotgun pleadings "exact an intolerable toll on the trial court's docket," among other things. *See Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).

Plaintiff's complaint falls under the second, third, and fourth categories of shotgun pleadings. First, Plaintiff's complaint is replete with vague and conclusory allegations. Plaintiff provides scant facts to support her claims throughout the complaint and fails to connect these facts with any causes of action. Plaintiff does not explain how the factual allegations relate to the claims for relief, making it difficult for the Court to discern which facts are intended to support which claims. *See Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (stating that a hallmark of a shotgun pleading is that "it is virtually impossible to know which allegations of facts are intended to support which claim(s) for relief"). Second, Plaintiff's complaint "commits the sin of not separating into a different count each cause of action or claim for relief." *See Weiland*, 792 F.3d at 1322. For example, Count VI conflates various theories of liability, most notably, negligent supervision and negligent training. (*See* Doc. 1 at p. 6). Plaintiff's complaint improperly combines negligent supervision and negligent training, two distinct causes of action with distinct elements, into a single element. *See Burgess v. Royal Caribbean Cruises Ltd.*, No. 20-cv-20687, 2020 WL 13349026, at *2 (S.D. Fla. Oct. 9, 2020) (dismissing claims titled "Negligently Hiring, Selection, Retention, Monitoring, and Training" as impermissible shotgun pleadings because "[t]hese counts combine different causes of action that have distinct elements of law and require different findings"). Third, throughout her complaint, Plaintiff improperly lumps multiple defendants together and fails to specify which defendant is responsible for which acts or omissions. As a result, Plaintiff's complaint makes it virtually impossible for the Court to discern what claims Plaintiff asserts against each defendant and what role, if any, each

- 6 -

defendant played in the alleged violations. *See Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996); *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (noting that in a case with multiple defendants, plaintiff should avoid "lumping" multiple defendants together because doing so makes it difficult to ascertain exactly what the plaintiff is claiming). Because Plaintiff's complaint constitutes an impermissible shotgun pleading, it fails to give the Defendants adequate notice of the claims asserted against them and the grounds upon which each claim rests. *See Weiland*, 792 F.3d at 1323.

### B.  Individual Defendants

Plaintiff sues three individual defendants—James Van Rhee, Jane McDaniel, and Jacqueline Comshaw (the "Individual Defendants")—in their individual and official capacities as Yale University employees, asserting claims under the ADA, the Rehabilitation Act, and Florida law. (*See* Doc. 1 at ¶¶ 14-15).

First, "there is no individual liability under either the ADA or the [Rehabilitation Act]." *See Miller v. Leo*, No. 5:24-cv-199-TES-AGH, 2025 WL 34814, at *10 (M.D. Ga. Jan. 6, 2025) (citing *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005)); *Z.P. v. Yale Univ.*, No. 3:19-cv-00315-WWE, 2019 WL 4573229, at *2 (D. Conn. Sept. 20, 2019) (noting that the Rehabilitation Act and the ADA do "not apply to individual defendants in their individual capacities"); *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 217 (E.D.N.Y. 1999) (stating that in the context of a Title III action, "the court holds that the Individual Defendants may not be held personally liable under either the ADA or the Rehabilitation Act"); *see also Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). Thus, to the extent Plaintiff is attempting to bring claims under the ADA or the Rehabilitation Act against the Individual Defendants in

their individual capacities, she cannot do so because such claims against individuals are not available under the ADA or the Rehabilitation Act.

Second, Plaintiff may not sue the Individual Defendants in their official capacities under Title III of the ADA because they "do not operate, own or lease a private facility offering public accommodation." *See Taylor v. Norwalk Cmty. Coll.*, No. 3:13-cv-1889-CSH, 2015 WL 5684033, at *10 (D. Conn. Sept. 28, 2015) (citing *Goonewardena v. New York*, 475 F. Supp. 2d 310, 321-22 (S.D.N.Y. 2007)); *Goonewardena*, 475 F. Supp. 2d at 321-22 ("[T]he individual defendants . . . are improper defendants [under Title III of the ADA] as in their official capacities they do not operate, own or lease a private entity which offers public accommodation."). Thus, the Individual Defendants are improper defendants under Title III of the ADA in their official capacities.

### C. Defendant Does 1-20

Plaintiff names "Does 1-20" as a defendant in the complaint, indicating that "Does 1-20 are unknown individuals whose identities will be discovered." (*See* Doc. 1 at ¶ 16). In general, "fictitious-party pleading is not permitted in federal court." *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted). The Eleventh Circuit has created a limited exception when the plaintiff's description of the defendant is specific enough to identify the defendant. *See id.* (citing *Dean*, 951 F.2d at 1215-16).

Here, Plaintiff has not provided sufficient particularity to identify defendant "Does 1-20" among the many individuals employed by Yale University. Thus, Plaintiff's naming of "Does 1-20" as a defendant in the complaint is not authorized in this Court.

### D. Federal Claims Under the ADA (Counts I, II, III, and IV)

Plaintiff asserts federal claims for disability discrimination, failure to accommodate or engage in the interactive process, retaliation, and constructive exclusion from equal participation under the ADA. (*See* Doc. 1 at pp. 5-6). As Plaintiff does not allege that she was discriminated against in private employment or by a public entity, the Court construes her ADA claims to fall within the ambit of Title III. *See A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) ("Title I prohibits discrimination in private employment; Title II prohibits discrimination by public entities (state or local governments); and Title III prohibits discrimination by [private entities in] 'place[s] of public accommodation[.]'") (citations omitted). Title III of the ADA prohibits places of public accommodation, including private schools, from discriminating against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations[.]" *See* 42 U.S.C. §§ 12181(7)(J), 12182(a).

The only form of relief available under Title III of the ADA is injunctive relief, which Plaintiff requests in her prayer for relief. (*See* Doc. 1 at p. 8); *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (explaining that the remedies available to an individual under Title III are set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief) (citing 42 U.S.C. § 12188(a)); *Jairath v. Dyer*, 154 F.3d 1280, 1283 n.7 (11th Cir. 1998) ("Although a private right of action for injunctive relief does exist under the ADA, it is uncontested that there is no private right of action for damages.").

To have standing to sue, a plaintiff must show (1) that she suffered an injury-in-fact, (2) a causal connection between the asserted injury-in-fact and the defendant's actions, and (3) that the injury will be redressed by a favorable decision. *See Kennedy*, 998 F.3d at 1229;

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). However, a plaintiff who seeks injunctive relief—which, as noted above, is the only form of relief available under Title III of the ADA—must show that, in addition to suffering a past injury, there is "a sufficient likelihood that [s]he will be affected by the allegedly unlawful conduct in the future." *See Houston*, 733 F.3d at 1328-29. To make that showing, the plaintiff must establish that the threat of future unlawful conduct is "real and immediate . . . as opposed to . . . merely conjectural or hypothetical." *See id*. at 1329.

"In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless [s]he alleges facts giving rise to an inference that [s]he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (finding plaintiff failed to plausibly allege future injury as required for standing to seek injunctive relief under the ADA); *see also Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284-85 (11th Cir. 2001) (finding current university student lacked standing where there was no evidence he intended to reapply for admission and, therefore, no likelihood of future exposure to discriminatory admissions practices).

In this instance, Plaintiff's complaint fails to allege an immediate and real threat of future injury. Her complaint contains only factual allegations regarding Defendants' past actions and no facts suggesting unlawful conduct by any defendant in the future. Injunctive relief is not available for past acts. *See Jairath*, 154 F.3d at 1283 n.8 (finding no remedy available under the ADA for defendant's past act of refusing treatment). Thus, Plaintiff lacks standing to seek injunctive relief under Title III of the ADA in this case.

### E.  Federal Claims Under the Rehabilitation Act (Counts I, II, III, and IV)

Plaintiff also asserts her federal claims for disability discrimination, failure to accommodate or engage in the interactive process, retaliation, and constructive exclusion from equal participation under the Rehabilitation Act. (*See* Doc. 1 at pp. 5-6). The Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *See* 29 U.S.C. § 794(a). The Eleventh Circuit has held that claims under the Rehabilitation Act and Title III of the ADA are governed by the same standard of liability. *See Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 830-31 (11th Cir. 2017); *Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1134 (11th Cir. 2018). "Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000).

### i.    Count I – Disability Discrimination

In Count I, Plaintiff asserts a claim for disability discrimination under the Rehabilitation Act, alleging that "Defendants denied [her] meaningful access to education on the basis of disability." (*See* Doc. 1 at ¶ 26). Plaintiff claims that she is "a qualified individual with a disability and was registered with Yale's Student Accessibility Services" and that "Defendants had actual notice of Plaintiff's disability and functional limitations." (*See id.* at ¶ 3).

To state a claim of disability discrimination under the Rehabilitation Act, a plaintiff must allege that (1) she is disabled; (2) was "otherwise qualified" for a program or activity; (3) was excluded from the program or activity solely because of the disability; and (4) sought

to use a program or activity "operated by an [entity] that receives federal financial assistance." *See Harris v. Thigpen*, 941 F.2d 1492, 1522 (11th Cir. 1991). An individual has a "disability" if she has (a) "a physical or mental impairment that substantially limits one or major life activities"; (b) "a record of such an impairment"; or (c) is "regarded as having such an impairment." *See* 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1). "[A]n otherwise qualified individual [in the context of post-secondary education] is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin v. Univ of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 781 (11th Cir. 2018) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (en banc)). To prevail on a discrimination claim under the Rehabilitation Act, a plaintiff must show that the defendant "intended to discriminate against h[er] on the basis of h[er] disability." *See T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 603-04 (11th Cir. 2010) (citation and internal quotation marks omitted).

Although Plaintiff alleges that she is "disabled," Plaintiff fails to identify the nature of her impairment and how that impairment substantially limits one or more of her major life activities. *See Garcia v. Goodwill Indus. of S. Fla., Inc.*, No. 18-25042-CIV, 2019 WL 6052814, at *2 (S.D. Fla. Nov. 15, 2019) (explaining that "a complaint must allege factual matter explaining *how* the alleged [impairment or] ailment substantially limits a major life activity") (emphasis in original) (citations omitted). Even assuming Plaintiff is disabled and was "otherwise qualified" for the Yale Physician Assistant Online Program, she has not alleged facts showing that she was subject to unlawful discrimination *because* of her disability. Plaintiff's bare conclusory allegations that Defendants discriminated against her based on her disability are not enough. *See Iqbal*, 556 U.S. at 678; see also *See T.W. ex rel. Wilson*, 610 F.3d

at 603-04. Thus, Plaintiff fails to state a claim for disability discrimination under the Rehabilitation Act.

### ii.  Count II – Failure to Accommodate or Engage in the Interactive Process

In Count II, Plaintiff asserts a claim for failure to accommodate or engage in the interactive process under the Rehabilitation Act, alleging that "Defendants failed to provide reasonable accommodations or engage in a good-faith interactive process." (*See* Doc. 1 at ¶ 27). Plaintiff asserts that she "requested reasonable accommodations, including alternative participation formats[,]" but "Defendants refused, delayed, mishandled, and/or withdrew accommodations without engaging in a lawful interactive process." (*See id.* at ¶¶ 18-19). Plaintiff alleges that "[a]ny testing accommodation provided addressed only timed examinations and did not address the primary barriers [she] faced, including high-frequency oral performance requirements that triggered disability-related cognitive shutdown and prevented meaningful learning." (*See id.* at ¶ 20). She contends that "Defendants treated disability-related impairment as misconduct rather than providing accommodation." (*See id.* at ¶ 23).

"In certain circumstances, an educational institution's refusal to accommodate the needs of a disabled person amounts to discrimination against that person because of her disability." *Zainulabeddin*, 749 F. App'x at 782 (citing *Cmty. Coll. v. Davis*, 442 U.S. 397, 412-13 (1979)). To state a failure to accommodate claim under the Rehabilitation Act, a plaintiff must demonstrate that she (1) was disabled; (2) is an otherwise qualified" individual; and (3) was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *See J.A.M. v. Nova Se. Univ., Inc.*, No. 0:15-cv-60248-KMM, 2015 WL 4751149, at *4 (S.D. Fla. Aug. 12, 2015), *aff'd*, 646 F. App'x 921 (11th Cir. 2016) (citing *Lucas*

*v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)); *Datto v. Fla. Int'l Univ. Bd. of Trustees*, No. 1:20-cv-20360, 2020 3963713, at *9 (S.D. Fla. July 13, 2020). "[A] failure to make reasonable accommodations claim requires no animus and occurs when a covered entity breaches its affirmative duty to reasonably accommodate the known physical or mental limitations of an otherwise qualified person." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010).

"A qualified individual with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation." *Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 F. App'x 21, 25 (11th Cir. 2009) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997)). A reasonable accommodation is one that enables the individual to meet and perform the technical standards at the post-secondary institution. *See Lucas*, 257 F.3d at 1255 (citing *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1988)). "An accommodation is not reasonable if it either [1] imposes undue financial and administrative burdens on a grantee or [2] requires a fundamental alteration in the nature of the program." *Shannon*, 335 F. App'x at 25 (quoting *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1220 (11th Cir. 2008)). "[T]he Rehabilitation Act does not require an educational institution to lower or effect substantial modifications of standards to accommodate a student's disability." *Zainulabeddin*, 749 F. App'x at 782; *see Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1298 (S.D. Fla. 2016). The plaintiff has the burden of identifying an accommodation and demonstrating that the requested accommodation is reasonable. *See Frazier-White v. Gee*, 818 F.3d 1249, 1255-56 (11th Cir. 2016) (citations omitted).

Moreover, "[i]n the academic setting, 'reasonable accommodations' jurisprudence contemplates an interactive process between the student and school, under which both sides have a responsibility to bring the issue of reasonable accommodations front and center." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010). "The initial burden is on the student, who must identify her disability and make a case for specific accommodations." *Id.* (citations omitted).

Here, Plaintiff has not pled allegations showing that she requested reasonable accommodations. Plaintiff does not explain, nor is it readily ascertainable, how Plaintiff's request for "alternative participation formats" demonstrates that she can meet and perform the standards in the Yale Physician Assistant Online Program. (*See* Doc. 1 at ¶ 18). Instead, Plaintiff merely contends in a conclusory manner that she was denied reasonable accommodations for the program. (*See* Doc. 1 at ¶¶ 4, 19, 22, 27); *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (stating that "conclusory allegations" and "unwarranted deductions of facts" are insufficient).

Although Plaintiff claims that Defendants' responses to her requests for accommodations were unreasonable and insufficient, Defendants provided Plaintiff with a testing accommodation on timed examinations, as Plaintiff acknowledges in her complaint. (*See* Doc. 1 at ¶ 20); *Forbes, Inc.*, 768 F. Supp. 2d at 1231 (stating that once a plaintiff requests reasonable accommodations, "the school is required to consider the request and make a reasoned decision to grant or deny it. Because academic faculties have a special understanding about which aspects of the educational experience can be modified, a school's decision about accommodations will be upheld unless it is plainly not based on professional judgment"); *cf. Wisniewski v. Sunset Elementary Sch.*, No. 24-21305-CIV, 2025 WL 606523, at *5 (S.D. Fla.

Feb. 4, 2024), *report and recommendation adopted*, 2025 WL 603049 (S.D. Fla. Feb. 25, 2025) (finding that "the allegations in the [c]omplaint describe [d]efendants' unwillingness to collaborate with [p]laintiffs on the accommodations for J.W., despite [p]laintiffs repeated attempted to be involved in the process"). Further, Plaintiff does not provide factual allegations that would lead to an inference that she was discriminated against by way of the Defendants' failure to provide a reasonable accommodation. She does not state how she was discriminated against, who discriminated against her, what accommodations she specifically requested, or who denied her such accommodations. Thus, Plaintiff fails to state a claim for failure to accommodate or engage in the interactive process under the Rehabilitation Act.

### iii.    Count III – Retaliation

In Count III, Plaintiff asserts a claim for retaliation under the Rehabilitation Act, alleging that "Defendants took adverse actions because Plaintiff engaged in protected activity[,]" such as "reporting a threat and retaliatory conduct by the Program Director to administrators[,] including the President of the School of Medicine, and seeking protection and accommodation." (*See* Doc. 1 at ¶¶ 21, 28). Plaintiff further alleges that Defendants' adverse actions include "denial and withdrawal of accommodations, refusal to modify or accommodate high-frequency oral performance requirements, and punitive academic and disciplinary responses to Plaintiff's disability-related inability to meet those requirements," which "occurred because of Plaintiff's disability-related limitations and protected activity." (*See id*. at ¶ 22).

To establish a retaliation claim under the Rehabilitation Act, a plaintiff must allege that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse

action. *See Goldsmith v. Bagby Elevator Co. Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). "The third element requires a showing of but-for-causation." *Frazier-White*, 818 F.3d at 1258 (citing *Univ. of Tex. SW. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *See Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (citation omitted). As such, "[t]he burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse . . . action, but the temporal relationship must be very close." *See Manigault v. Comm'r, Soc. Sec. Admin.*, 609 F. App'x 982, 985 (11th Cir. 2015) (per curiam); *Tolar v. Bradley Arant Boult Cummings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021) (indicating that "[a] plaintiff can establish a prima facie causal link 'by showing close temporal proximity between the statutorily protected activity and the adverse . . . action.'") (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)); *see also Chandler v. Sheriff, Walton Cnty.*, No. 22-13698, 2023 WL 7297918, at *2 (11th Cir. Nov. 6, 2023) (per curiam) (determining that a gap of more than three months between the protected activity and the adverse action, without more, is too long to demonstrate a causal connection) (citing *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)).

Plaintiff fails to allege a close temporal relationship between the statutorily protected activity and the alleged adverse actions. For example, she does not allege when she made her purported requests for reasonable accommodations. Although Plaintiff relies on several protected activities (including requests for reasonable accommodations) in support of her retaliation claim, she alleges in a conclusory manner that there is a causal connection between the protected activity and the adverse actions. *See Franklin*, 738 F.3d at 1248 n.1 (explaining

- 17 -

that the court "afford[s] no presumption of truth to legal conclusion and recitations of the basic elements of a cause of action") (citations omitted). As with much of her complaint, she does not specify when each of the protected activities and adverse actions occurred. Since Plaintiff's allegations do not establish what, if any, temporal relationship exists between the protected activity and the alleged adverse actions, Plaintiff does not adequately allege that Defendants' adverse actions were causally related to that protected activity. *See Hargett v. Fla. Atl. Univ. Bd. of Trustees*, No. 15-CIV-80349, 2015 WL 13639189, at *4 (S.D. Fla. Dec. 15, 2015) (finding that plaintiff failed to state a claim for retaliation when she did not sufficiently allege the temporal relationship between the adverse action and the protected expression to establish causation). Thus, Plaintiff fails to state a claim for retaliation under the Rehabilitation Act.

### iv.    Count IV – Constructive Exclusion from Equal Participation

In Count IV, Plaintiff asserts a claim for "constructive exclusion from equal participation" under the Rehabilitation Act, alleging that "Defendants' conduct effectively excluded Plaintiff from equal participation in the Program by subjecting her to conditions that prevented her from safely and meaningfully learning due to fear, cognitive shutdown, and lack of accommodation." (*See* Doc. 1 at ¶ 29).

As a general matter, under the Rehabilitation Act, "[a] plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *See Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)); *Schwarz*, 544 F.3d at 1212 n.6 (stating that the Rehabilitation Act recognizes "intentional discrimination," "disparate treatment," and "reasonable accommodation" as theories); *see also Redding v. Nova*

*Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1299-1301 (S.D. Fla. 2016) (discussing whether plaintiff's requested accommodations were necessary under the Rehabilitation Act "to ameliorate a disability's effect of preventing meaningful access to the benefits of, or participation in, the program at issue" in the context of a failure to accommodate claim). Based on the sparse allegations in the complaint, it appears that Plaintiff's claim for "constructive exclusion from equal participation" should fall under the theory of failure to make reasonable accommodations, which Plaintiff asserts in Count II. (*See* Doc. 1 at p. 5).

Nevertheless, the Rehabilitation Act "requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the [federal] grantee offers." *See Alexander v. Choate*, 469 U.S. 287, 301 (1985). "[T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.*; *see Ambrose v. St. Johns Cnty. Sch. Bd.*, 664 F. Supp. 3d 1322, 1331-32 (M.D. Fla. 2023) (indicating that a defendant does not need to accommodate a plaintiff who has meaningful access to the benefit at issue) (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)). However, the Rehabilitation Act does not require accommodations "beyond those necessary to eliminate discrimination against otherwise qualified individuals." *See Cmty. Coll.*, 442 U.S. at 410. Although the Rehabilitation Act "promises equal opportunity, it does not guarantee equal results." *See Redding*, 165 F. Supp. 3d at 1299 (citing *Alexander*, 469 U.S. at 304). As such, the Rehabilitation Act "requires only those accommodations that are necessary to ameliorate a disability's effect of preventing meaningful access to the benefits of, or participation in, the program at issue." *See id.* (citations omitted).

"Meaningful participation and access to an academic program includes the opportunity to advance to the next academic year on the regular schedule and to achieve one's

- 19 -

academic potential on a level playing field with one's peers." *Id.* Indeed, "[w]hen a qualified student's disability prevents such meaningful participation, a reasonable accommodation cannot be called unnecessary." *Id.*; *see also Ambrose*, 664 F. Supp. 3d at 1331-32 (explaining that a plaintiff must demonstrate that he lacks "meaningful access" to a public benefit to which he is entitled because of his disability); *E.O. by & through Ortiz v. Sch. Bd. of Hillsborough Cnty.*, No. 8:24-cv-1888-TPB-AEP, 2024 WL 4518559, at *3 (M.D. Fla. Oct. 17, 2024) ("[D]ifficulty in accessing a benefit does not establish a lack of meaningful access.") (citation omitted).

Here, Plaintiff fails to identify a particular benefit that Defendants denied her by reason of her disability. *See Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 888 (8th Cir. 2009) (explaining that a plaintiff "must specify a benefit to which he was denied meaningful access based on his disability"). Without specifying the particular benefit, the Court is unable to discern how Defendants denied Plaintiff meaningful participation and access to the program. Thus, Plaintiff has not shown she was denied meaningful participation and access to benefits.

## F.  State Claims (Counts V, VI, VII, VIII, and IX)

Plaintiff asserts state claims for negligence, negligent supervision and training, intentional infliction of emotional distress ("IIED"), breach of contract, and promissory estoppel. (*See* Doc. 1 at pp. 6-7). Plaintiff has failed to allege a plausible claim for relief against Defendants under Florida law.

### v.    Count V – Negligence

In Count V, Plaintiff asserts a negligence claim, contending that "Defendants breached duties of reasonable care owed to Plaintiff." (*See* Doc. 1 at ¶ 30). To state a claim for negligence under Florida law, a plaintiff must allege (1) a duty, (2) breach of that duty, (3)

causation, and (4) damages. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012).

Plaintiff fails to articulate what duty Defendants owed Plaintiff and how they breached that duty through the conduct alleged. Without further detail, the Court cannot parse out what conduct supports Plaintiff's negligence claim. Thus, Plaintiff fails to state a negligence claim under Florida law.[2]

### vi.    Count VI – Negligent Supervision and Training

In Count VI, Plaintiff asserts a claim for negligent supervision and training, contending that the "Yale Defendants failed to supervise and train personnel regarding disability compliance." (*See* Doc. 1 at ¶ 31). As noted above, Plaintiff improperly combines two causes of action—negligent supervision and negligent training—into a single count. (*See id.*). Courts routinely dismiss complaints that combine some variation of these causes of action into a single count. *See, e.g.*, *Finch v. Carnival Corp.*, 701 F. Supp. 3d 1272, 1284-85 (S.D. Fla. 2023) (dismissing a count for failing to separately plead claims for negligent supervision, negligent training, and negligent hiring); *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 2592914, at *9 (S.D. Fla. Apr. 21, 2021) (finding that dismissal was warranted as negligent supervision and negligent training are separate claims which must be pled separately); *Burgess*, 2020 WL 13349026, at *2 (dismissing claims titled "Negligently Hiring,

---

[2] Moreover, to the extent Plaintiff bases her negligence claim on alleged statutory violations of the ADA or the Rehabilitation Act, she cannot sustain a claim. *See C.P. v. Leon Cnty. Sch. Bd.*, No. 4:03-cv-65-RH/WCS, 2005 WL 2133699, at *5 (N.D. Fla. Aug. 27, 2005) (explaining that a negligence claim could not be based on alleged statutory violations of 42 U.S.C. § 1983, the ADA, the Rehabilitation Act, or the Florida Educational Equity Act); *see also Liese v. Indian River Cnty. Hosp. Dist.,* 701 F.3d 334, 352-53 (11th Cir. 2012) (indicating that neither the Rehabilitation Act nor its regulation, or the ADA, creates a negligence duty under Florida law).

Selection, Retention, Monitoring, and Training" because "[t]hese counts combine different causes of action that have distinct elements of law and require different findings").

Notwithstanding that Count VI is improperly pled, Plaintiff fails to state a claim for negligent supervision and negligent training. "Negligent supervision occurs when[,] during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate[] his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-cv-23733, 2016 WL 6330587, at \*4 (S.D. Fla. Oct. 27, 2016) (citation and internal quotation marks omitted); *see Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012). To state a claim for negligent supervision, a plaintiff must allege that (1) "the employer received actual or constructive notice of an employee's unfitness," and (2) "the employer did not investigate or take corrective action such as discharge or reassignment." *See Doe*, 2016 WL 6330587, at \*4.

Here, Plaintiff fails to allege any facts that Defendants had actual or constructive notice of problems with any particular employee's fitness, and that Defendants failed to investigate or take corrective action. The same is true for Plaintiff's attempt to state a claim for negligent training.

"Negligent training occurs when an employer 'was negligent in the implementation or operation of the training program.'" *Gutman v. Quest Diagnostics Clinical Lab'ys, Inc.*, 707 F. Supp. 2d 1327, 1331 n.4 (S.D. Fla. 2010) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)). To state a claim for negligent training, a plaintiff must allege that (1) a defendant was negligent in the implementation or operation of a training program; and (2) that negligence causes the plaintiff's injury. *See Anders v. Carnival Corp.*, No. 23-21367-CIV,

2023 WL 4252426, at *4 (S.D. Fla. June 29, 2023) (citing *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021)); *Doe*, 2016 WL 6330587, at *4. "[T]he conventional elements of duty, breach, causation, and damages must be shown in negligent training claims." *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1316 (M.D. Fla. 2010) (citing *Watson v. City of Hialeah*, 552 So. 2d 1146, 1149 (Fla. Dist. Ct. App. 1989)).

Plaintiff fails to plead that Defendants' negligent implementation or operation of their training program caused any injury to Plaintiff. Thus, Plaintiff fails to state a claim for negligent supervision or negligent training under Florida law. *See Doe*, 2016 WL 6330587, at *3-4 (concluding that plaintiff failed to state a claim for negligent hiring, supervision, and training in case involving alleged sexual assault on a cruise ship).

### vii.    Count VII – Intentional Infliction of Emotional Distress

In Count VII, Plaintiff asserts a claim for IIED, contending that "Individual Defendants engaged in extreme and outrageous conduct, including retaliatory and humiliating conduct in the presence of Plaintiff's peers, causing severe emotional distress." (*See* Doc. 1 at ¶ 32). To state an IIED claim under Florida law, a plaintiff must allege that (1) "the defendant's conduct was intentional or reckless"; (2) "the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community"; (3) "the conduct caused emotional distress"; and (4) "the emotional distress was severe." *See Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). "[W]hether a person's conduct is sufficiently outrageous and intolerable as to form the basis for a claim of intentional infliction of emotional distress is a *matter of law for the court*, not a question of fact." *Griffin v. Polk Cnty. Sheriff's Off.*, No. 8:09-cv-960-T-33MAP, 2009 WL 5171754, at *2 (M.D. Fla. Dec. 23, 2009) (emphasis in original); *see Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 2d 1264, 1270 (S.D. Fla.

2016) (indicating that whether the conduct was outrageous is an objective question and not dependent on the plaintiff's subjective perception) (citing *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)). The standard for outrageous conduct is "extremely high" in Florida. *See State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1213 (Fla. 5th DCA 1995).

On the bare facts as alleged, Plaintiff does not state a claim for IIED against Defendants. Plaintiff's broad, conclusory allegation that Defendants purportedly engaged in "retaliatory and humiliating conduct in the presence of Plaintiff's peers" is insufficient to constitute an IIED claim under Florida law. (*See* Doc. 1 at ¶ 32). The conduct alleged by Plaintiff falls far short of the level of outrageousness required by Florida law. *See Moore*, 806 F.3d at 1053; *see, e.g.*, *Arasteh v. LuxUrban Hotels Inc.*, No. 24-21990, 2024 WL 4370890, at *6 (S.D. Fla. Oct. 2, 2024) (finding that plaintiff did not demonstrate outrageous conduct in IIED claim where a nighttime hotel manager made "highly offensive racial slurs and threats" to plaintiff, a dark-skinned male, and the daytime manager later kicked plaintiff out of the hotel); *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (finding that plaintiff failed to allege sufficient outrageous conduct where deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest); *Fleming v. State of Fla.*, No. 2:23-cv-1092-JES-NPM, 2024 WL 7008688, at *4 n.5 (M.D. Fla. July 29, 2024) (collecting cases where courts dismissed IIED claims with alleged conduct far worse than what the plaintiff had alleged). "Liability does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Roberts v. Amtrust Bank*, No. 14-81266-CIV, 2014 WL 7273982, at *2 (S.D. Fla. Dec. 22, 2014) (quoting *Scheller v. Am. Med. Int'l,*

*Inc.*, 502 So. 2d 1268, 1271 (Fla. Dist. Ct. App. 1987)). Thus, Plaintiff fails to state a claim for IIED under Florida law.

### viii.    Count VIII – Breach of Contract

In Count VIII, Plaintiff asserts a claim for breach of contract, contending that "Yale breached contractual promises regarding accessibility and educational support." (*See* Doc. 1 at ¶ 33). To state a claim for breach of contract under Florida law, a plaintiff must plead (1) the existence of a contract, including offer, acceptance, consideration, and essential terms; (2) a material breach; and (3) damages. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.,* 985 So. 2d 56, 58 (Fla. Dist. Ct App. 2008); then *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)). "It is well established that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract[.]" *Acosta v. Dist. Bd. of Trustees of Miami-Dade Cmty. Coll.*, 905 So. 2d 226, 228 (Fla. Dist. Ct. App. 2005) (citation omitted).

Plaintiff's mere allegation that "Yale breached contractual promises" is legally insufficient on each of the elements, with the exception, perhaps, of damages. Plaintiff's complaint does not allege how Yale (or any other defendant) materially breached the contract, let alone the existence of a valid contract to begin with. Plaintiff's complaint is devoid of any allegations regarding an offer, acceptance, consideration, or the essential terms of a contract exchanged with Yale or any of the Defendants, and she has provided no factual allegations that would amount to a "meeting of the minds" between the parties. Without more allegations, Plaintiff's single assertion against Yale in her breach of contract claim is nothing more than a "legal conclusion couched as a factual allegation." *See Iqbal*, 556 U.S. at 678. Thus, Plaintiff fails to state a claim for breach of contract under Florida law.

### ix.    Count IX – Promissory Estoppel

In Count IX, Plaintiff asserts a claim for promissory estoppel, contending that she "reasonably relied on Yale's promises to her detriment." (*See* Doc. 1 at ¶ 34). To establish a promissory estoppel claim under Florida law, a plaintiff must allege that: (1) "a promise made by the promisor"; (2) "which the promisor should reasonably expect to induce action or forbearance on the part of the promisee"; (3) "that in fact induced such action or forbearance"; and (4) that "injustice can be avoided only by enforcement of the promise." *See White Holding Co., LLC v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 947 (11th Cir. 2011) (quoting *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989). The absence of a promise defeats a promissory estoppel claim. *See Barrett v. Scutieri*, 281 F. App'x 952, 954 (11th Cir. 2008) (citing *Mount Sinai Hosp. of Greater Miami, Inc. v. Jordan*, 290 So. 2d 484, 486 (Fla. 1974.

Here, there are no factual allegations showing that Defendants made any promises to Plaintiff to induce any action or forbearance by Plaintiff such that an injustice would occur if the alleged promises were not enforced. *See Sepulveda v. Sepulveda*, No. 1:20-cv-265-AW-GRJ, 2021 WL 2545474, at *3 (N.D. Fla. May 21, 2021), *report and recommendation adopted sub nom. Elias Sepulveda v. Sepulveda*, 2021 WL 2533236 (N.D. Fla. June 19, 2021) (finding that plaintiff failed to establish a promissory estoppel claim because there were "no factual allegations showing that Caleb Sepulveda Sr.'s affidavit induced any action or forbearance by Plaintiff such that an injustice would occur if the alleged promises were not enforced"); *Gabriel v. SLS Lux Brickell Hotel*, No. 24-cv-23572, 2025 WL 886925, at *4 (S.D. Fla. Mar. 21, 2025) (determining that plaintiff failed to state a promissory estoppel claim because plaintiff did not show that the defendant "should have reasonably expected him to act or forbear from acting

- 26 -

in a certain way, that he *did* in fact act or forbear from acting in that way, or that it'd be unjust not to enforce [defendant's] alleged promise" that it would hire him) (emphasis in original). Notably, contrary to her assertion, Plaintiff does not allege that Defendants made any representations on which she relied to her detriment. Thus, Plaintiff fails to state a claim for promissory estoppel under Florida law.

### G. Other Claims (Counts X and XI)

Plaintiff also asserts claims for spoliation or failure to preserve evidence, and declaratory and injunctive relief. Plaintiff fails to state a plausible claim for relief against Defendants because neither claim can create an independent cause of action.

### x.    Count X – Spoliation or Failure to Preserve Evidence

In Count X, Plaintiff asserts a claim for "Spoliation / Failure to Preserve Evidence," contending that "Defendants failed to preserve and produce education records," and as a result, "[t]his failure impaired Plaintiff's ability to reconstruct events, demonstrate notice and causation, and materially hindered her ability to secure counsel, constituting ongoing litigation-related harm." (*See* Doc. 1 at ¶¶ 35-36). There is no independent cause of action against a first-party defendant for spoliation of evidence. *See Morrison v. Morgan Stanley Props.*, No. 06-80751CIV, 2007 WL 2316495, at *7 (S.D. Fla. Aug. 9, 2007) (determining that spoliation of evidence claims "cannot stand as an independent cause of action"); *Martino v. Wal-Mart Stores, Inc.*, 908 So. 2d 342, 347 (Fla. 2005) (holding that a remedy against a first-party defendant for spoliation of evidence is not an independent cause of action); *Fini v. Glascoe*, 936 So. 2d 52, 54-55 (Fla. 4th DCA 2006) (finding that an independent cause of action does not exist under Florida law for first-party spoliation of evidence claims).

Here, Plaintiff asserts a claim of first-party spoliation of evidence against Defendants. (*See* Doc. 1 at ¶¶ 35-36). Since Florida law does not recognize a cause of action for first-party spoliation, Plaintiff cannot state a claim for "Spoliation / Failure to Preserve Evidence."

### xi.    Count XI – Declaratory and Injunctive Relief

In Count XI, Plaintiff asserts a claim for "Declaratory and Injunctive Relief," contending that "[a]n actual controversy exists warranting declaratory and injunctive relief, including relief related to records preservation and production and compliance with disability-law obligations." (*See* Doc. 1 at ¶ 37). Declaratory judgments and injunctions do not provide an independent cause of action, but rather are remedies. *See Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029, 1037 (N.D. Ala. 2022) ("Declaratory judgments and injunctions are not causes of action but, rather, are remedies tied to some other cause of action. . . . [T]he Declaratory Judgment Act does not supply an independent cause of action which may be asserted without mentioning the source of the law that creates the rights and legal relations the party wants the court to declare."); *Feingold v. Budner*, No. 9:08-cv-80539-DTKH, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) ("Declaratory judgments and injunctions are equitable remedies, not causes of action."). Thus, Plaintiff cannot state a claim for "Declaratory and Injunctive Relief."

### H. Amendment

Out of an abundance of caution, the Court will provide Plaintiff with an opportunity to file an amended complaint to clarify the basis of her claims. Plaintiff must provide the Court with sufficient information in a coherent manner so that it can perform the review required under § 1915. The amended complaint must clearly state the legal theory or theories upon which Plaintiff seeks relief and explain with factual allegations how the Defendants are

responsible. Plaintiff should carefully consider whether she can allege a claim in good faith because pursuing frivolous claims could lead to the imposition of sanctions.

Plaintiff is cautioned that, despite proceeding *pro se*, she is required to comply with this Court's Local Rules, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. Plaintiff may obtain a copy of the Local Rules from the Court's website (http://www.flmd.uscourts.gov) or by visiting the Office of the Clerk of Court. Additionally, resources and information related to proceeding in court without a lawyer, including a handbook entitled "Guide for Proceeding Without a Lawyer," can be located on the Court's website (http://www.flmd.uscourts.gov/pro_se/default.htm). Plaintiff should also consult the Middle District of Florida's Civil Discovery Handbook for a general discussion of this District's discovery practices (http://www.flmd.uscourts.gov/civil-discovery-handbook).

## IV.   CONCLUSION

Accordingly, Plaintiff's Motion to Proceed in Forma Pauperis (Doc. 2) is **TAKEN UNDER ADVISEMENT**. Plaintiff shall file an amended complaint on or before **May 22, 2026**. The amended complaint must comply with all pleading requirements contained in Rules 8, 9, 10, and 11 of the Federal Rules of Civil Procedure and those contained in the Local Rules of the Middle District of Florida. Failure to comply with this Order may result in a recommendation that this action be dismissed for failure to prosecute.

**DONE** and **ORDERED** in Ocala, Florida on May 1, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

- 30 -

Copies furnished to:

Counsel of Record
Unrepresented Parties